IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Julie Schivelbein,                                    Case No. 3:14CV1449

          Plaintiff

     v.                                              **ORDER**

HCF Management, Inc.

          Defendants

This is an employment discrimination case. Plaintiff Julie Schivelbein claims defendant HCF Management, Inc. (HCF) engaged in sex and age discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 626, and O.R.C. § 4112.02. The gravamen of her complaint is that HCF offered a job she sought to a less qualified male candidate and sought to demote her in order to offer her position to a younger candidate.

Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367.

Pending is HCF's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). (Doc. 22). For the reasons that follow, I grant the motion.

## Background

HCF is part of a "family of companies" providing health care services to elderly residents in Ohio and Pennsylvania. The family of companies includes twenty-seven nursing homes and assisted living facilities, with each being a separate corporate entity. (Doc. 22 at 94). HCF

provides management services to its affiliated companies pursuant to a contract with each company. Julie Schivelbein went to work for HCF in February, 2010, as its Regional Director of Business Development.

### A. Alleged Sexual Harassment Incident

Scott Unverferth, defendant's Director of Operations, supervised Schivelbein. In May, 2011, at about 12 a.m., he called her at her room at a hotel where she and he were staying while at a conference. He asked her to meet him in the lobby; she did so. In Schivelbein's view, the ensuing conversation suggested Unverferth wanted to have sex with her. She declined.

Schivelbein eventually complained to Unverferth about his conduct. Unverferth said he understood he had made her uncomfortable. (Doc. 29 at 208).

While she perceived their working relationship as strained, she did not report her concerns to HCF's Human Resources Director. (Doc. 29 at 209).

Unverferth supervised Schivelbein for two more years. Throughout this time, she received positive job reviews and raises. (Doc. 29 at 205).

### B. Employment Opportunity with Heritage

In May, 2013, David Walsh, CEO of Heritage Health Care Services (Heritage), contacted Schivelbein, encouraging her to apply for a position with Heritage.

Heritage is a separate corporation from HCF, but belongs to the same family of companies. Like its sister companies, it has a separate corporate identity, with its own corporate office, records and bank account, and management team, including a CEO and Human Resources Director.

Schivelbein applied for the job. She spoke with Tim Luckett, Heritage's Human Resources Director, about the position and had two interviews. The day after her second

2

interview, Luckett sent an email asking Schivelbein about salary expectations. She replied she would accept between $110,000 and $130,000 annually, not including any bonus income.

This stunned Luckett. He later told her Heritage decided to pursue other candidates. Luckett and Walsh made the decision based on the fact the budget for the position could not exceed $80,000 to $85,000 and that, in their view, Schivelbein lacked relevant experience.

According to Schivelbein, John Fischbach, Vice President of HCF, told her she did not get the job because she was a woman.

Many months later, the job went to a male candidate.

### C.  Issues with Anne Bacon and Discharge

In July, 2012, Schivelbein, who was then forty years old, hired Anne Bacon, who was thirty-four years old, to be Director of Physician Relations.

In November, 2013, Shane Stewart became Schivelbein's supervisor. According to Schivelbein, Stewart began "grooming" Bacon to replace Schivelbein. He was doing so, Schivevlbein believes, because he wanted to have an affair with Bacon. Schivelbein also believed Stewart had a history of pursuing romantic relationships at work.

Soon afterward, HCF began looking for a Corporate Director of Business Development. Schivelbein applied for the position, as did Bacon. On learning this, Schivelbein began actively seeking support from subordinates.

Some employees whose support Schivelbein had solicited went to management to report Schivelbein had disparaged Bacon and tried to discredit her. They reported Schivelbein told them Stewart favored Bacon over her due to Bacon's putative relationship with Stewart.

In addition, though Schivelbein contended she had only asked for letters from subordinates who felt comfortable with her request, many of her subordinates found the requests distressing given the power imbalance.

3

On hearing reports of Schivelbein's conduct, Stewart concluded she had been creating a disturbance within the company. He particularly viewed her solicitation of letters as inappropriate, especially because, had she received the promotion, she would have had more authority over those individuals.

Schivelbein attended a meeting with Unverferth, Stewart, and Charles Orkowoski, Director of Human Resources, regarding her solicitation of the letters; they suspended her for having done so.

When Schivelbein returned from her suspension, Unverferth, Stewart, and Orkowoski explained that they were removing her from her Regional Director's position and giving her a lesser position within the company. They also told Schivelbein she had shown poor judgment and created a negative and intimidating work environment.

Later, Orkowoski told her if she did not take the position, the company would treat the refusal as a resignation.

She declined to take the position and resigned on December 8, 2013. At the time, she was forty-one years old.

Defendant seeks summary judgment on Schivelbein's claims of sex and age discrimination for its failure to obtain the position with Heritage, demotion, and loss of her job. In her opposition to the summary judgment motion, she also asserts a retaliation claim not alleged in her complaint.

## Analysis

### A. Standard of Review

Summary judgment is appropriate under Fed. R. Civ. P. 56 where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581 (6th Cir. 1992). The initial burden of showing an absence of

4

any material facts rests with the moving party. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 409 (6th Cir. 1998).

If the moving party satisfies that initial burden, the non-moving party may not rest merely on the allegations in the pleadings. The non-moving party must affirmatively show a genuine issue remains to be litigated. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Summary judgment is proper if in viewing all facts and drawing all reasonable inferences in a light most favorable to the non-moving party reasonable minds can come to but one conclusion that is adverse to the non-moving party. *Bush v. Rauch*, 38 F.3d 842, 846 (6th Cir. 1994).

### B. Sex Discrimination Claim

#### 1. Failure to Hire

HCF contends it is entitled to summary judgment on Schivelbein's sex discrimination claim under Title VII and Ohio law for two reasons.

First, HCF argues Schivelbein has sued the wrong company. It contends Schivelbein has failed to assert that Heritage, which allegedly discriminated against her by failing to hire her, and HCF constitute an integrated enterprise. By failing to present evidence there is single-employer, joint-employer, or an agency relationship between the two companies, HCF argues Schivelbein has not shown there is a triable factual issue that it is liable for sex discrimination.

Second, HCF argues Schivelbein forfeited the retaliation claim when she failed to allege it in her complaint.

These contentions are well-taken.

Schivelbein contends HCF discriminated against her when she did not get the position with Heritage. It is, however, undisputed that Heritage refused to hire her. Therefore, to survive

5

summary judgment, Schivelbein must show that HCF is liable under either 1) the "single employer" doctrine; 2) the "joint employer" doctrine; or 3) an agency relationship.

### a.  Single Employer

Under the single employer doctrine, "two companies may be considered so interrelated that they constitute a single employer subject to liability" under Title VII and Ohio law. *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997). In determining whether two companies constitute a single employer, courts look at four factors: "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Id*. at 993-94.

Setting aside Schivelbein's failure even to address this issue, no reasonable jury could find HCF and Heritage constitute a single employer.

First, there is no evidence of interrelation of operations. HCF and Heritage each maintain a separate office, keep separate records, have independent bank accounts, and have and use their own equipment.

Second, there is minimal and clearly insufficient evidence of common management. Although Heritage shares directors with HCF, it has a separate management team, including a CEO and Human Resources Director.

Third, there is no evidence HCF controlled labor relations at Heritage. Schivelbein admits she is not aware who made the final decision not to hire her. She does not even allege the decision makers were not solely Heritage employees, Walsh and Luckett. (Doc. 22-1 at 187).

Finally, there is no evidence of common ownership or financial control. HCF and Heritage are legally separate corporations, and Schivelbein has not alleged the distinct legal

identity of either is a sham. *EEOC v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 572-73 (6th Cir. 1984) ("If neither of the entities is a sham then the fourth test is not met.")

For these reasons, a reasonable fact-finder could not conclude HCF and Heritage constitute a single employer.

### b. Joint Employer

Under the joint employer doctrine, "[one] entity is the joint employer of another entity's formal employees, and thus liable under federal and state anti-discrimination laws, if the two 'share or co-determine those matters governing essential terms and conditions of employment.'" *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 492 (6th Cir. 2011) (quoting *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985)).

To determine whether two entities are a joint employer, courts look at "the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance." *Id*.

Here, Schivelbein has presented no evidence HCF played any role whatsoever in the hiring decision. She does not allege HCF could, much less did influence the hiring process. Rather, she alleges John Fischbach, Vice President of HCF, informed her Heritage did not hire her because she is a woman. Even taken as true, this does not advance her claim against HCF.

Accordingly, a reasonable fact-finder could not find HCF is a joint employer for purposes of Heritage's failure to hire.

### c. Agency Relationship

Finally, under the principles of agency law, a company may be liable for the acts of another company if the latter company acts as its agent. "An agent is one who consents to act on behalf of another and subject to the other's control." *Swallows*, *supra*, 128 F.3d at 996). In the context of employment discrimination statutes, an agent must be "an agent with respect to employment practices." *Id*.

7

Schivelbein fails to argue Heritage acted an agent of HCF in seeking candidates for hire. The evidentiary record in no way suggests Heritage sought an employee on HCF's behalf or that HCF exercised any control over the hiring process.

Based on these facts, no reasonable jury could find an agency relationship exists between HCF and Heritage.

### 2. Retaliation

Schivelbein also contends HCF demoted her in retaliation for her rejection of Unverferth's sexual advances and complaint to him that he had made her uncomfortable.

Although Schivelbein characterizes this contention as discrimination on the basis of sex, thereby trying to link the assertion with the sex discrimination claim in her complaint, a claim of retaliation is a distinct claim from a sex-discrimination claim. *See Berry v. Delta Airlines*, 260 F.3d 803, 809 (7th Cir. 2001) ("Title VII makes discrimination and retaliation separate wrongs."); *Okwen v. Am. Mar. Officers Plans*, 2015 WL 3904991, *8 (S.D. Fla.) ("Stating claims of Title VII discrimination, retaliation, and hostile work environment claims each require distinct, separate elements.").

Schivelbein's retaliation claim fails at the outset because she did not plead that claim in her complaint. Rather, she raised it for the first time in her opposition to HCF's summary-judgment motion. The claim is, therefore, not properly before me. *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 787-89 (6th Cir. 2005).

In any event, the claim also fails on the merits.

To make out a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) her employer knew that she engaged in the protected activity; (3) her employer took an adverse employment action against her; and (4) the adverse action was

causally connected to the protected activity. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009).

The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F. 3d 531, 544 (6th Cir. 2008). If the employer meets this burden, the employee must demonstrate that the employer's offered reason is a pretext for the actual retaliatory reason. *Id*.

### a. Sexual Harassment

Schivelbein alleges her former supervisor, Unverferth, made an unwanted sexual advance toward her. She later confronted him and told him his actions made her uncomfortable. In response, Schivelbein contends, Unverferth sought to retaliate and has done so through his involvement in the decision to suspend and demote her.

Schivelbein's retaliation claim fails for two reasons.

First, Schivelbein cannot make out a *prima facie* case.

This is so, even though Schivelbein engaged in protected activity by complaining to Unverferth about his sexual advance, so that he was aware of her protected activity. However, even assuming *arguendo* that HCF took an adverse employment action against Schivelbein, she fails to establish a factual dispute as to causation.

"To show causation, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected conduct." *Lamer v. Metaldyne Co. LLC*, 240 Fed. App'x 22, 29 (6th Cir. 2007).

Here, no other incidents of sexual harassment followed. In fact, Schivelbein continued to work under Unverferth's supervision for more than two years and received positive performance evaluations and pay increases.

This hardly creates an inference of discriminatory retaliation. Schivelbein confronting Unverferth about his actions, standing alone, does not suggest she would not have been suspended or demoted absent her complaining over two years priors. *See Balmer v. HCA, Inc*., 423 F.3d 606, 615 (6th Cir. 2005) ("The mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim.").

Finally, assuming, *arguendo*, that Schivelbein has met her *prima facie* burden in this case, she still is unable to show the reasons HCF proffers for its actions are a mere pretext.

To establish that an employer's stated reason for adverse action was pretextual, a plaintiff must show the reason: 1) had no basis in fact; 2) did not actually motivate the challenged conduct; or 3) is insufficient to explain the challenged conduct. *Manzer v. Diamond Shamrock Chems. Co*., 29 F.3d 1078, 1084 (6th Cir. 1994).

HCF asserts Schivelbein made disparaging remarks about Bacon, campaigned against Bacon among co-workers, complained openly about favoritism she perceived toward Bacon, and sought recommendation letters from subordinates in her competition with Bacon for the open position.

A few employees, moreover, reported Schivelbein for making them uncomfortable and fostering a negative environment. HCF considered Schivelbein's actions to reflect an extreme lapse of judgment and doubted her ability to serve as a supervisor.

Schivelbein simply fails to show how a reasonable jury could find that these reasons, put forth by HCF, have no basis in fact, did not serve as an actual motivation, or could not otherwise explain the adverse action. Even if she could, both the job she sought and the job she held went to female candidates. As a consequence, her claim adverse action was taken against her on the basis of her sex fails.

### b.  Favoritism

Schivelbein also alleges her supervisor, Stewart, suspended and demoted her because he wanted her job to go to Bacon, with whom Schivelbein believed, Stewart had or desired to have a romantic relationship.

This argument also fails for two reasons.

First, Schivelbein fails to make out a *prima facie* case.

Even if true, the allegation does not support an inference of sex discrimination, retaliatory or otherwise. The essence of sex discrimination is unequal treatment on the basis of sex. *See Ackel v. Nat'l Communs*., Inc., 339 F.3d 376, 382 (5th Cir. 2003) ("Courts have held that when an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than [sex].")

Favoring one woman over another for emotional or romantic reasons is not unlawful under Title VII. *Wilson v. Delta State Univ*., 143 F. App'x 611, 614 (5th Cir. 2005). Taking Schivelbein's allegation as true, even if Bacon obtained the position because of her alleged romantic relationship with Stewart,[1] the law does not provide a remedy because "the fact [Schivelbein] may have been terminated for complaining about favorable treatment received by [Bacon] is unrelated to [Schivelbein's sex]." *Id*.

This type of favoritism is "more akin to nepotism." *Briggs v. Univ. of Detroit-Mercy*, 22 F. Supp. 3d 798, 809 (E.D. Mich. 2014); *see also Schobert v. Ill. Dep't of Transp*., 304 F.3d 725, 733 (7th Cir. 2002) ("Whether the employer grants employment perks to… a protegé, an old friend, a close relative or a love interest, that special treatment is permissible [under Title VII] as long as it is not based on an impermissible classification.")

---

[1] The record, I emphasize, fails to show that any such relationship existed; indeed, there is no factual basis for Schivelbein's contention that Stewart desired any such realtionship with Bacon or anyone else. Schivelbein's contentions in that regard are speculative.

Second, for reasons already stated, Schivelbein cannot demonstrate HCF's grounds for demoting her were pretextual.

Because Schivelbein did not raise a retaliation claim in her complaint, and because, even if here claim were well-plead, there is no evidence permitting a reasonable jury to find for her on that claim, HCF is entitled to summary judgment.

### B. Age Discrimination Claim

HCF asserts it is also entitled to summary judgment on the age discrimination claim under ADEA and Ohio law because Schivelbein cannot present any evidence sufficient to overcome its legitimate, non-discriminatory reason for her demotion.

As a general rule, "claims of discrimination brought pursuant to [Title VII] and the ADEA are analyzed under the same framework." *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002).

To establish a *prima facie* case of age discrimination, Schivelbein must show she: 1) is a member of a protected group, 2) was subject to an adverse employment decision, 3) was qualified for the position, and 4) was replaced by a person outside of the protected class. *Kline v. TVA*, 128 F.3d 337, 349 (6th Cir. 1997*); see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) ("Age discrimination claims brought under the Ohio statute are 'analyzed under the same standards as federal claims brought under the [ADEA].'")

The protected group under the ADEA encompasses persons aged forty or older. 29 U.S.C. § 631(a); *see also* O.R.C. § 4112.14 (including the same age group as a protected status).

I assume *arguendo* Schivelbein made out a *prima facie* case of age-discrimination.

Schivelbein was forty-one when she left HCF, is a member of the protected group and a person sixteen years younger than Schivelbein took her place. That Schivelbein was generally qualified for the job in question is not in dispute.

12

Furthermore, a reasonable jury could conclude the demotion constituted an adverse employment action. HCF offered Schivelbein a choice between a lesser position, with a less distinguished title and attending duties, or unemployment. The lesser position paid ten thousand dollars less than her prior position and had fewer benefits.

Nevertheless, Schivelbein has produced no evidence to rebut HCF's non-discriminatory reason for her demotion.

Schivelbein offers nothing to shows that the reasons Stewart and Unverferth expressed for their decision – problems in job performance, prior issues, and questionable conduct while seeking a promotion – were insincere and but a mere pretext to mask an intent of age discrimination.

In fact, the record is "devoid of any evidence of an overall pattern of age-hostile remarks, or of a history of ageist employment decisions." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 585 n.11 (6th Cir. 2003).

Schivelbein references age only in her conclusory allegation she was demoted because her supervisor, Stewart, prefers younger women and sought to replace her. She incorrectly identified Bacon, who is only six years younger, as the candidate who obtained the job she sought. Bacon, however, did not get the job. Another female candidate, who is significantly younger, obtained the job.

Nevertheless, aside from unverified hunches and unsupported suspicions, Schivelbein cannot show HCF demoted her, or that she quit, *because* of her age.

Accordingly, summary judgment is proper on the age discrimination claim as the evidence does not permit a reasonable jury to return a verdict for Schivelbein.

## Conclusion

It is, therefore,

ORDERED THAT Defendant HCF Management's motion for summary judgment (Doc. 22) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge
